HON. ASAHEL PECK,
HON. WILLIAM C. WILSON, } ASSISTANT JUDGES.

---

STURGES AND DOUGLASS *v.* KNAPP AND BRIGGS, *Trustees,* AND THE
TROY & BOSTON RAILROAD COMPANY.

### [IN CHANCERY.]

#### *Chancery.*

Where on an appeal from chancery the mandate of the supreme court directed that
the orators be charged with interest on a certain injunction bond, from the time
the case should reach the court of chancery, it was *held* that the cause reached
the latter court, within the meaning of the mandate, at the first regular term of
the court of chancery after the mandate was received by the clerk.

Difference noticed between the chancellor and the court of chancery.

In January, 1857, the trustees of the Western Vermont Railroad; who had acquired an absolute title under decree of foreclosure expired, made a lease of the road to the Troy and Boston Railroad Company, for the term of ten years. A majority of the bondholders under that mortgage were dissatisfied with the lease, and desired to have it set aside, as they were advised that it was illegal. For this purpose, after various meetings and correspondence had taken place, they appointed Jonathan Sturges, Thomas Douglass, and James L. Stark, a committee to institute proceedings to invalidate the lease, and to obtain an injunction against any further occupation under it. The committee accordingly brought a bill in chancery for that purpose in May, 1857, against the trustees of the Troy & Boston Railroad Company, and on application to Chancellor Kittridge, and a hearing of the parties, an injunction was granted, restraining the defendants from possession of the road, and placing it in the hands of C. M. Davey, as receiver. And in pursuance of the further order of the court, the orator, Sturges, executed a bond with surety in the sum of thirty thousand dollars, as an indemnity to the defendants against damages sustained by the injunction, if it should ultimately be held to have been improperly granted.

A decree for the orators, setting aside the lease, was made in December, 1857, from which the defendants appealed to the supreme court. In November, 1858, the judgment of that court was delivered, reversing the decree of the chancellor, holding the lease in all respects valid, and remanding the cause to the court of chancery with directions that the orator's bill be dismissed with costs. *See the case as reported*, 31 Vt. 1.

In December, 1858, in the court of chancery, the receiver was discharged, the injunction dissolved, and the lessees permitted to resume possession of the road, and a reference to special masters was ordered, to ascertain and report the damages sustained by the defendants, in consequence of the injunction. After a protracted hearing, the masters made their report in December, 1859, awarding damages to both the parties defendant, to an amount considerably exceeding the penalty of the bond; the damages allowed the trustees, however, being for the entire loss of rent sustained by the in-

junction, and estimated on the basis of all the bondholders being allowed to participate. A *pro forma* decree having been made on this report, an appeal was taken by the orators to the supreme court. That court rendered judgment substantially affirming the allowance of damages, but holding that no recovery could be had of the orators beyond the amount of their bond, and that any money in the receiver's hands should be applied toward the payment of the remaining damages. *See the case as reported in* 33 Vt. 486.

The cause having been remanded to the court of chancery for further proceedings, a question arose as to the period for which interest should be allowed on the bond, and as to the proportion in which the damages recovered should be divided between the two parties defendant, the trustees and the Troy & Boston Railroad Company. A *pro forma* decree having been taken on these points, the case passed again to the supreme court on appeal, and at the February Term, 1863, the court decided that interest on the bond should be allowed from the time when the cause reached the court of chancery, when last remanded by the supreme court, and that the division of the amount recovered among the defendants should be made *pro rata*, as between the entire damages allowed to the Troy & Boston Railroad Company, and that portion of the damages allowed the trustees, which belonged to bondholders who did not participate in obtaining, or assent to the injunction. And the cause was again remanded to the court of chancery. *See the decision of the supreme court,* 36 Vt. 440.

The basis of division of the injunction damages between the defendants, having been settled in accordance with the decision of the supreme court, when the cause came up for final decree at the December Term, 1865, it was claimed by the orators that the defendants were, under that decision, only entitled to interest from the time when the final decree in the court of chancery was made, being December Term, 1865. And the chancellor, KELLOGG, so decreed, *pro forma.*

From this decree both defendants appealed.

*L. B. Peck* and *E. J. Phelps,* for the defendants.

*Pierpoint Isham,* for the orators.

Sturges et al. *v.* Knapp et al.

The opinion of the court was delivered by

PECK, J. The mandate in this case directed that the orators be charged with interest on the $30,000, the amount of the injunction bond, from the time the case should reach the court of chancery. The question is, when did the case reach the court of chancery, the moment it was decided by the supreme court, or when the court of chancery made their decree in pursuance of the mandate, or at some intermediate time? It is urged by the counsel for the defendants that it was when the supreme court decided the case, as the case was then no longer pending in the supreme court, and therefore must be in the court of chancery from that time. It is urged that from that time the court of chancery had power over the case to make any necessary orders in the cause. But if the chancellor could, before the next regular term of the court of chancery, make interlocutory orders in the cause, it does not follow that the cause reached the court of chancery until the next term of that court. The mandate does not say when the *mandate* reaches the *chancellor* or the clerk, but when the *cause* reaches the *court of chancery*. There is a manifest difference between a chancellor and a court of chancery, the one has not all the powers of the other. The court of chancery by law has its regular appointed terms fixed by statute the same as a court of law. All bills in equity must be made returnable at the regular term of the court fixed by law. The chancellor can make necessary orders in vacation for furthering the cause, but cannot render a final decree in the cause. The cause reached the court of chancery within the meaning of the mandate, at the first regular term of the court of chancery, after the mandate was received by the clerk. That is the earliest time in practice when the court acts under the mandate. The reason the court did not allow interest from an earlier date, was that it was not decided how much the orators were bound to pay. The reason the court decided interest should be paid from the time the cause should reach the court of chancery, was that the decision and mandate settled definitely the amount to be paid, and if the cause should be delayed to ascertain the necessary facts to make the aportionment between the several defendants, the orators would pay the money into court. But by the *court of chancery* is

not meant the *chancellor*, but the court of chancery at a term thereof known and fixed by law, when the chancellor and clerk would be present, and when suitors are bound to attend. Even if the chancellor could in such case, before the regular term, make an order authorizing the orators to pay the money into the court, the mandate did not contemplate any such proceding in vacation. It is true that according to the recent practice the court of chancery does not adjourn, but, except when in session at the regular term, or at a time fixed to do the business of the term, the court is not in practice regarded as open except for the purposes of such acts as a chancellor may legally do in vacation, although by consent of parties a hearing may be had and final decree rendered, entitled as of the term. There is no ground for postponing the time at which interest should be computed, beyond the time fixed in the mandate, to the time when the court make their decree in pursuance of the mandate. The ground urged by the orators is, that before the case went to the supreme court at the time when that mandate was sent down, there had been an order by agreement of parties for a stay of the payment of the money. This either was, or might have been, urged on the hearing in the supreme court when the decision as to interest was made, and it is immaterial which. The court will not on a second appeal reverse a decision already made in the same cause. But if the question were open, the ground urged is not tenable; for by the bond filed to procure that delay, the orators stipulate to pay such interest as the court shall allow. It is evident that the bond contemplated such interest as should be adjudged to be paid independent of the fact of such stipulation.

The decree of the court of chancery is reversed and cause remanded with directions to modify the decree by computing interest on the $30,000, from the first day of the June Term, 1864, of the court of chancery, that being the first regular term of the court of chancery, after the decision of the supreme court was in fact made, the case having been held by the supreme court for consideration.